IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 24-30503-EVR-7 |
| MYRA PARK 635, LLC, | § § | Chapter 7 |
| Debtor. | § § § | |
| CLARK RIDGE CANYON, LTD., | § § § | |
| Plaintiff, | § § § | |
| v. | § § | ADV. NO. _____ |
| PRIME A INVESTMENTS, LLC, EVA ENGELHART, CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF MYRA PARK 635, LLC, FERCAN E. KALKAN, DALLAS COUNTY, RESOLUTION FINANCE, LLC, CIVE, INC., H&E EQUIPMENT SERVICES, INC., and BIG D CONCRETE, INC., | § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF CLARK RIDGE CANYON, LTD.'S ORIGINAL
COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTY JUDGE:

Plaintiff Clark Ridge Canyon, Ltd., files its Original Complaint for Declaratory Judgment against Defendants Prime A Investments, LLC, Eva Engelhart, Chapter 7 Trustee of the Bankruptcy Estate of Myra Park 635, LLC, Fercan E. Kalkan, Dallas County, Resolution Finance, LLC, CIVE, Inc., H&E Equipment Services, Inc., and Big D Concrete, Inc., averring and alleging as follows:

# I.
# JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This Court can hear and determine this matter in accordance with 28 U.S.C. § 157.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

3. This Court has personal jurisdiction over the Defendants because they do business in Texas and have appeared in this bankruptcy case and submitted to the jurisdiction of this Court.

4. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

# II.
# PARTIES

5. Plaintiff Clark Ridge Canyon, Ltd. ("CRC") is a Texas limited partnership with its principal place of business in DeSoto, Dallas County, Texas.

6. Defendant Prime A Investments, LLC ("Prime") is a Delaware limited liability company doing business in the State of Texas, and may be served with service of process at 16850 Bear Valley Road, 2nd Floor, Victorville, California 92395, or wherever else it may be found.

7. Defendant Eva Engelhart, Chapter 7 Trustee of the Bankruptcy Estate of Myra Park 635, LLC (the "Trustee") is the duly appointed chapter 7 trustee of the bankruptcy estate of Myra Park 635, LLC (the "Debtor"), *In re Myra Park 635, LLC*, Case No. 24-30503-EVR-7, and may be served with service of process at her place of business at 7700 San Felipe, Suite 550, Houston, Texas 77063, or wherever else she may be found.

8. Defendant Fercan E. Kalkan ("Kalkan") is an individual domiciled in the State of Texas and may be served with service of process at 143 Manor Lake Estates, Spring, Texas 77379, or wherever else he may be found.

2

9. Defendant Dallas County ("County") is a governmental entity in Texas and may be served with service of process through the Dallas County Clerk, 500 Elm Street, Suite 2100, Dallas, Texas 75202, or wherever else it may be found.

10. Defendant Resolution Finance, LLC ("RF"), is a Texas limited liability company doing business in Texas and may be served with service of process at 4100 Alpha Road, Suite 670, Dallas, Texas 75244, or wherever else it may be found.

11. Defendant CIVE, Inc. ("CIVE"), is a Texas corporation doing business in Texas and may be served with service of process at 5444 Westheimer Road, Suite 1440, Houston, Texas 77056, through its registered agent for service of process, Scott J. Davenport, 2009 Lubbock Street, Houston, Texas 77007, or wherever else it may be found.

12. Defendant H&E Equipment Services, Inc. ("H&E"), is a Delaware corporation doing business in Texas and may be served with service of process at 1351 E. Bardin Road, Suite 150, Arlington, Texas 76018, or wherever else it may be found.

13. Defendant Big D Concrete, Inc. ("Big D") is a Texas corporation with its principal place of business in Texas and may be served with service of process at 10361 Bickham Road, Dallas, Texas 75220, or wherever else it may be found.

## III.
## FACTUAL ALLEGATIONS

14. On May 5, 2020, the Debtor acquired title to Tract 1 - 6.115 acres of land in Farmers Branch, Dallas County and Tract 2 - 0.084 acres of land in Farmers Branch, Dallas County (the "Property") from Prime by a Special Warranty Deed recorded in the real property records of Dallas County, Texas as Instrument No. 202000115073.

15. Subsequent to the recording of the Special Warranty Deed, Prime recorded a Supplemental Agreement in the real property records of Dallas County, Texas, as Instrument No.

3

202000115074. Prime claims an interest in the Property in the nature of an option to repurchase the Property by virtue of the Supplemental Agreement, as reflected by proof of claim number 7 in the amount of $7,700,000.00 filed in the Debtor's bankruptcy case.

16. The Supplemental Agreement has an Effective Date of May 1, 2020, and makes reference to an Agreement for Purchase and Sale of Real Property and Joint Escrow Instructions dated as of June 28, 2018, as amended by the first through ninth amendments (the "Purchase Agreement").  The Supplemental Agreement requires the Debtor to construct a senior living community on the Property and provides that if the Debtor did not commence construction within 24-months of the Effective Date or complete construction within 48-months of the Effective Date then Prime had an option to repurchase the Property (the "Option").

17. The Supplemental Agreement provides that, if Prime exercises the Option, the price to be paid by Prime to repurchase the Property will be the original price paid by Debtor to purchase the Property pursuant to the Purchase Agreement (which amount is not stated in the Supplemental Agreement) plus the Debtor's documented out-of-pocket expenses, costs, fees, and expenditures not to exceed $500,000.00.

18. Prime contends that the Option price is $3,300,000.00.

19. The Supplemental Agreement further provides:

> B. Developer [Debtor] shall, at its sole cost and expense, within fifteen (15) days after receipt of written notice of exercise of the Option, furnish to Prime A: (i) a commitment for an ALTA extended coverage owner's policy of title insurance issued by the Title Company (with copies of all underlying documents listed in the commitment) showing title to the Project in Prime A and subject only to those exceptions to title that existed as of the Developer's acquisition of the Developer's Property from Prime A (together with any additional encumbrances which were reasonably necessary for the development and construction of the Project, excluding mortgages, deeds of trust or any other monetary liens or blanket encumbrances) (collectively, "Permitted Exceptions"); and (ii) Developer's most recent survey of the Project.  Prime A shall be allowed thirty (30) days after receipt of such commitment and underlying documents and survey for examination and the

making of objection thereto. If any objections are so made, Developer shall be allowed thirty (30) days to remove the objections at its sole cost or expense or cause the Title Company to issue its endorsement(s) over such objections. If said objections are not removed or the Title Company is not prepared to issue its endorsement(s) over any such objections within thirty (30) days from the date of objection thereto, as above provided, any agreement of purchase resulting from the exercise of the Option shall, at the written election of Prime A (in its sole and absolute discretion), be null and void of no further force or effect (but, in any event, shall not deprive Prime A from seeking any other right or remedy available at law or in equity). Prime A shall exercise its election by declaring such resulting agreement to purchase null and void by giving Developer written notice to such effect within twenty (20) days after the expiration of the aforesaid 30-day period. Failure of Prime A to give notice as aforesaid shall constitute an election by Prime A to take title to the Project as it then is (with the right to deduct from the Project Purchase Price liens or encumbrances of a definite or ascertainable amount).

20. The Supplemental Agreement does not state a deadline or expiration date for exercise of the Option once one of the conditions triggering the Option occurs.

21. First Guaranty Bank ("FGB") entered into a Construction Loan Agreement dated August 12, 2021, with the Debtor. In connection with the Construction Loan Agreement, the Debtor executed a Promissory Note dated August 12, 2021 in favor of FGB in the principal amount of $33,081,329.00, and a Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing (the "Deed of Trust"), recorded in the real property records of Dallas County, Texas, on August 16, 2021, as Instrument No. 202100243457, which granted a first lien on the Property to secure repayment of the Debtor's obligations under the Promissory Note and the Construction Loan Agreement.

22. The purpose of the FGB loan was to finance the construction of an independent senior living facility on the Property, comprising several apartment buildings and a six-story parking garage.

23. FGB assigned the Promissory Note, Construction Loan Agreement, Deed of Trust, and other loan documents to CRC by an Assignment of Note and Liens recorded on August 30, 2023, in the real property records of Dallas County, Texas, as Instrument No. 202300175964.

24. CRC claims a first-priority security interest in the Property by virtue of the Promissory Note, Construction Loan Agreement, FGB Deed of Trust, and Assignment of Note and Liens, as reflected by proof of claim number 9 filed in the Debtor's bankruptcy case.

25. County claims an interest in the Property by virtue of a statutory tax lien to secure payment of ad valorem taxes as reflected by proof of claim number 1 in the amount of $155,531.38 filed in the Debtor's bankruptcy case.

26. RF claims an interest in the Property by virtue of a Tax Lien Contract recorded on February 21, 2023, in the real property records of Dallas County, Texas, as Instrument No. 202300032635, and a Certified Statement of Transfer of Tax Lien recorded on March 15, 2023, in the real property records of Dallas County, Texas, as Instrument No. 202300049602, as reflected by proof of claim number 6 in the amount of $100,337.89 filed in the Debtor's bankruptcy case.

27. Kalkan claims an interest in the Property by virtue of a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture, recorded on August 16, 2021 (subsequent to the recordation of the FGB Deed of Trust) in the real property records of Dallas County, Texas, as Instrument No. 202100243458, as reflected by proof of claim number 14 in the amount of $6,062,993.16 filed in the Debtor's bankruptcy case.

28. CIVE claims an interest in the Property by virtue of a Second Amended and Restated Affidavit for Mechanic's and Materialman's Lien and Constitutional Lien, recorded on December 13, 2023, in the real property records of Dallas County, Texas, as Instrument No.

202300250323, as reflected by proof of claim number 13 in the amount of $2,876,776.32 filed in the Debtor's bankruptcy case.

29. H&E claims an interest in the Property by virtue of an Affidavit for Mechanic's and Materialman's Lien, recorded on September 21, 2022, in the real property records of Dallas County, Texas, as Instrument No. 202200252298, as reflected by proof of claim number 2 in the amount of $69,586.83 filed in the Debtor's bankruptcy case.

30. Big D claims an interest in the Property by virtue of an Affidavit Claiming Statutory Mechanic's and Materialman's Lien, recorded on September 29, 2023, in the real property records of Dallas County, Texas, as Instrument No. 202300200063, as reflected by proof of claim number 12 in the amount of $19,940.48 filed in the Debtor's bankruptcy case.

31. The Debtor drew on the FGB construction loan and commenced construction of the independent senior living facility on the Property specifically site work and partial construction of the parking garage, but construction work on the Property ceased in 2023.

32. On October 25, 2023, Bank of DeSoto as servicer on the loan for CRC, provided written notice to the Debtor that it had defaulted in its payment obligations and that the entire balance had been accelerated and was due and payable.

33. On January 16, 2024, CRC provided the Debtor with written notice of its intent to sell the Property at foreclosure on February 6, 2024.

34. The Debtor filed its petition for relief under chapter 11 of the United States Bankruptcy Code on February 5, 2024.

35. On October 17, 2024, this Court entered its Order Confirming Debtor's Plan of Reorganization (the "Plan"). The Plan provides for payment in full of all creditors from the

proceeds of a refinance loan of $52.65 million to be obtained from Westview Capital which refinance was required to close by December 16, 2024.

36. The Plan incorporates a settlement between the Debtor and Prime for the Debtor to pay Prime $1,375,000.00 in full satisfaction of Prime's claims under the Option, and further provides:

> If Prime is not paid pursuant to the terms of this Plan, then it is an event of default under Article XIII, and if it is not cured per Art. XIV, the plan injunction is lifted. Likewise, a default under Article XIII shall occur if the Effective Date of the Plan and payment to Prime does not occur on the Effective Date and prior to the Closing Deadline. However, the bankruptcy court will have sole jurisdiction to resolve the competing liens in Class 3. If a Default occurs, the Estate (Debtor or Trustee) will commence a neutral Adversary Proceeding to determine the extent, validity, priority, and appropriate enforcement of the competing interests – including the Option, the recorded liens, and the M&M claims. Each claimant of an interest will be required to "answer" by asserting its own position. That Adversary Proceeding will be commenced in and determined by the Bankruptcy Court. To the extent practicable, the determination of that Adversary Proceeding and any attendant discovery will be expedited, with cost containment all around being a consideration. That Adversary Proceeding will be commenced in and determined by the Bankruptcy Court. To the extent practicable, the determination of that Adversary Proceeding and any attendant discovery will be expedited, with cost containment all around being a consideration.

37. On December 20, 2024, the Debtor filed Debtor's Notice of Loan Refinance Extension, stating that, with the agreement of CRC and Prime, the closing deadline had been extended by sixty days.

38. The Debtor was unable to close the refinance with Westview Capital and the U.S. Trustee filed a motion to convert the Debtor's bankruptcy case to a case under chapter 7.

39. On April 22, 2025, this Court entered its Order Converting Case Under Chapter 11 to Case Under Chapter 7. The Trustee has been appointed as chapter 7 trustee of the bankruptcy estate of the Debtor.

40. As of the date of filing this complaint, CRC's debt secured by its lien against the Property is $8,992,815.06.

41. The fair market value of the Property, not taking Prime's Option into consideration, is approximately $9,250,000.00.

## IV.
## LEGAL PRINCIPLES

42. In Texas, unreasonable restraints on the alienation of real property are invalid. *Tiner v. Johnson*, 647 S.W.3d 103, 109 (Tex. App.—Tyler 2022, pet. denied); *Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 862 (Tex. App.—Dallas 1994, no writ).

43. An important factor in analyzing an alienation-restraining option is the reasonableness of the option's time limit. *Procter*, 884 S.W.2d at 861-62.

44. A fixed-price purchase option of unlimited duration that restricts alienation of real property is unreasonable and void as a matter of law. *Procter*, 884 S.W.2d at 862; *Gray v. Vandver*, 623 S.W.2d 172, 175 (Tex. App.—Beaumont 1981, no writ).

45. There are three policy reasons for the rule preventing unreasonable restraints on alienation: (1) balancing the current property owner's desire to prolong his control over the property and a later owner's desire to be free from the dead hand, (2) better utilization of society's wealth by reducing fear due to uncertain investments and helping assets flow to those who would put the assets to their best use, and (3) keeping property available to satisfy the owner's current exigencies, thereby stimulating the competitive theory basis of the economy. *Tiner*, 647 S.W.3d at 109; *Procter*, 884 S.W.2d at 862.

46. The standard against which the impact of a restraint is to be measured is that of the property owner free to transfer property at his or her convenience at a price determined by the market. *Tiner*, 647 S.W.3d at 110. The reasonableness of an option to purchase land is determined

by the duration of the option and its price. If the price is fixed, the effect of the option is to discourage the improvement of the land, and the option is unreasonable unless its duration is limited. *See Tiner*, 647 S.W.3d at 110.

47. Here, because the price of Prime's Option is far below the Property's present market value and the duration of the Option is forever, the Option constitutes an unreasonable restraint on alienation and is void. *See Tiner,* 647 S.W.3d at 110; *Procter*, 884 S.W.2d at 862; *see also Meduna v. Holder*, No. 03-02-00781-CV, 2003 WL 22964270 at *3-*5 (Tex. App.—Austin Dec. 18, 2003, no pet.)

48. Since the Debtor failed to complete construction of the senior living facility by May 1, 2024, Prime has claimed a right to purchase the Property for $3,300,000.00 at any time in the future and no matter how much value has been added to the Property by its development and improvement in the interim. This effectively forecloses alienation forever because no prudent purchaser would risk losing the vast majority of its investment by purchasing the Property subject to Prime's Option.

49. Additionally, an option agreement does not pass title or convey an interest in property—instead, it merely gives the optionee the option to purchase the property within a certain time period. *Target Corp. v. D&H Properties, LLC*, 637 S.W.3d 816, 838 (Tex. 2021); *N. Shore Energy, LLC v. Harkins*, 501 S.W.3d 598, 605-06 (Tex. 2016).

50. Accordingly, Prime by exercising the Option does not have the ability to remove or eliminate encumbrances that attached to the Property after its grant of the Property to the Debtor. And the Supplemental Agreement recognizes as much because it requires the Debtor to remove encumbrances to which Prime objects and, if the Debtor cannot do so, Prime's options are to abandon the repurchase or take title subject to those encumbrances. Thus, if Prime exercised its

Option to repurchase the Property, it could not simply wipe out the liens that have attached to the Property after the Debtor's acquisition of the Property—either the Debtor would pay off the subsequent lien indebtedness or Prime would take the Property subject to the liens.

51. Further, Prime's Option would not be binding on the subsequent lienholders if they foreclosed and took title to the Property. Although the Supplemental Agreement states that it runs with the land and is binding on successors and assigns, it runs afoul of the rule that any alleged exception, reservation, or limitation that is not expressly and clearly stated in the written document is unenforceable. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740 ,746 (Tex. 2020); *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018). The alleged exception, reservation, or limitation must be clear and specific, identify the affected property with reasonable certainty, and is strictly construed against the grantor. *Hughes v. CJM Resources, LP*, 640 S.W.3d 623, 629 (Tex. App.—Eastland 2022, no pet.); *Henry v. Smith*, 637 S.W.3d 226, 235 (Tex. App.—Fort Worth 2021, pet. denied); *Cook v. Nissimov*, 580 S.W.3d 745, 752 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

52. The Supplemental Agreement fails the rule requiring clear and specific statement of the limitation. It does not specify the repurchase price that must be accepted for reconveyance of the Property—that can only be determined by obtaining the Purchase Agreement and the First through Ninth Amendments, which are not publicly available documents. It also does not identify all the holders of the right to repurchase and does not identify the dominant estates.

53. The consequence of an exception, reservation, or limitation not being sufficiently clear and specific is that it fails. *Angell v. Bailey*, 225 S.W.3d 834, 840-41 (Tex. App.—El Paso 2007, no pet.). Accordingly, the Option is not an effective covenant running with the land and would not be enforceable against a subsequent lienholder that had taken title through a foreclosure.

54. Moreover, the operation of the Option—requiring the Debtor to remove any subsequent encumbrances at its own cost and expense—would work a forfeiture of the value of all improvements the Debtor had made to the Property. Effectively, the Debtor's ownership of the Property would be subject to a condition subsequent—failure to meet the deadline for completion of construction would force the Debtor to part with title to the Property in exchange for only its original purchase price plus $500,000.

55. Conditions subsequent are not favored by the courts and the promise or obligation of the grantee will be construed as a covenant unless an intention to create a conditional estate is clearly and unequivocally expressed in the language of the instrument. *Hearne v. Bradshaw*, 312 S.W.2d 948, 951 (Tex. 1958). The law does not favor forfeitures and courts will construe instruments to avoid a forfeiture if possible. *Dilbeck v. Bill Gaynier, Inc.*, 368 S.W.2d 804, 807 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.); *Bailey v. Mullens*, 313 S.W.2d 99, 102 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.).

56. Since forfeiture of an estate for breach of a condition subsequent is not favored by the courts, a promise of the grantee will be construed as a covenant rather than a condition. *Zapata v. Torres*, 464 S.W.2d 926, 929 (Tex. Civ. App.—Dallas 1971, no writ). The chief distinction between a covenant and a condition subsequent is that the remedy for a breach of the provision if it is a covenant is limited to a claim for damages while the breach of a condition subsequent results in a forfeiture of the estate. *Zapata*, 464 S.W.2d at 929; *Dilbeck*, 368 S.W.2d at 807.

## V.
## CAUSE OF ACTION

57. CRC repeats and incorporates by reference its allegations in paragraphs 1 through 56 above as though set forth in full.

58. Pursuant to 28 U.S.C. § 2201 CRC seeks declaratory judgment regarding the parties' respective rights in the Property with specific reference to Prime's Option.

59. An actual and concrete controversy exists between CRC and Prime in that Prime contends that its Option is valid and enforceable, is binding on CRC and other lienholders as a covenant running with the land, and the exercise of which will eliminate the liens of CRC and other lienholders, whereas CRC maintains that the Option is void as an unreasonable restraint on alienation, does not constitute a covenant running with the land, is not binding on CRC and other lienholders, and is unenforceable because it would work a forfeiture.

60. The Trustee, County, RF, Kalkan, CIVE, H&E, and Big D are joined in this action because they have or claim interests in the Property that could be affected by the declaration sought by CRC in this action.

61. CRC is entitled to declaratory judgment that the Option is void as an unreasonable restraint on alienation, does not constitute a covenant running with the land, is not binding on CRC and other lienholders, and is unenforceable because it would work a forfeiture.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Clark Ridge Canyon, Ltd., respectfully requests that this Court enter declaratory judgment that Prime's Option is void as an unreasonable restraint on alienation, does not constitute a covenant running with the land, is not binding on CRC and other lienholders, and is unenforceable because it would work a forfeiture, and grant Clark Ridge Canyon, Ltd., such other and further relief as the Court finds just and equitable.

Respectfully submitted, this 20th day of May 2025.

                                    */s/ J. Robert Arnett II*
                                    J. Robert Arnett II
                                    Texas State Bar No. 01332900
                                    Email:  barnett@carterarnett.com
                                    **CARTER ARNETT PLLC**
                                    8150 N. Central Expressway, Suite 500
                                    Dallas, Texas 75206
                                    Tel.: 214-550-8188 | Fax: 214-550-8185

                                    **Attorneys for Clark Ridge Canyon, Ltd.**